IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **LC WARD, JR.,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | **No. MO:20-CV-259-DC** |
| | § | |
| **ROCKWATER ENERGY SOLUTIONS,** | § | |
| *Defendant*. | § | |

## <u>ORDER</u>

BEFORE THE COURT is Defendant Rockwater Energy Solutions, LLC's ("Defendant" or "Rockwater") Motion for Summary Judgment (Doc. 19), Plaintiff LC Ward, Jr.'s ("Plaintiff" or "Ward") Response to Defendant's Motion (Doc. 28), and Defendant's Reply (Doc. 29), as well as Plaintiff's Motion for Partial Summary Judgment (Doc. 20), Defendant's Response to Plaintiff's Motion (Doc. 27), and Plaintiff's Reply (Doc. 30). After due consideration, the Court **DENIES** Defendant's Motion and **DENIES** Plaintiff's Motion. (Docs. 19, 20).

### I.   BACKGROUND

In January 2007, Ward applied for a commercial driver position with Rockwater's predecessor, Reef Chemical Corporation, Inc. ("Reef"). (Doc. 19-1). Thereafter, Reef employed Ward as a driver at Reef's location in Midland, Texas. (Doc. 19-4 at 91:19-25; 92:20-23). As a commercial driver for Reef, Ward's duties included loading, hauling, and delivering chemicals to customers in the Permian region. (*Id*. at 92:6-19).

In 2010, Reef promoted Ward to a service technician position and moved him to the Odessa yard, assigning him to service the St. Mary Energy Company account. (*Id*. at 49:13-21; 93:25–94:13). As a service technician, Ward worked in the field at customer locations assisting

with pumping chemicals and related onsite tasks.  (*Id*. at 99:4-14).  Ward performed both driver and technician duties.  (Doc. 19-2 at 45–49); (Doc. 19-4 at 96:6-14; 173:12-16; 98:23–99:3).

In 2012, Ward was diagnosed with Multiple Sclerosis ("MS").  (Doc. 19-4 at 76:17-20). In 2014, Rockwater acquired Reef and experienced a downturn in business and Ward performed more driver duties.  (*Id*. at 93:4-10; 94:17–95:9; 96:1-14; 173:4-10).  In 2016, Ward's worked under Rockwater's Odessa operations manager Gregory Steer ("Steer") who remained Ward's supervisor for the remainder of Ward's tenure at Rockwater.  (*Id*. at 62:17-25; 98:13-16).

Ward received monthly infusions for his MS.  (*Id*. at 86:2-15).  Ward told his supervisor, John Minor ("Minor"), when he was first diagnosed with MS.  (*Id*. at 84:15-22).  Ward did not have issues obtaining approval from Rockwater for his MS or taking time off for doctor appointments and medical treatment.  (*Id*. at 83:2-25).  Steer treated Ward fairly.  (*Id*. at 98:20-23).  In 2018, Select Energy Services, LLC ("Select") acquired Rockwater.  (*Id*. at 93:11-15). From 2018 to 2020, Ward worked as a driver out of the Odessa yard.  (Doc. 19-5).

As a motor carrier, Rockwater is subject to the rules of the U.S. Department of Transportation ("DOT") including the Federal Motor Carrier Safety Regulations ("FMCSRs") and requires its drivers to comply with all applicable DOT regulations.  (Doc. 19-4 at 8:2-5; 40:22–41:5).  In 2019, Rockwater implemented a driver safety compliance and monitoring system using a software called iScout and requiring its drivers to complete mandatory Driver Vehicle Inspection Reports ("DVIRs") through the iScout application.  (*Id*. at 102:15-22).

In September 2019, Ward's supervisor, Steer, identified the following issues for improvement and goals for Ward:

- "Maintain accurate and daily DVIR[s] in [iS]cout";

- "Incident/observation reporting in [iS]cout";

- "Continue working consistently and safely, want to begin report observations in [iS]cout";

- "Complete monthly deliveries & communicate any irregularities to manager";

- "Good [p]re-trip, DVIR[s], & gate checks, continue goal of no violations";

- "Schedule regular oil changes, report truck issues to maintenance for repair—Help lower maintenance cost";

- "Reduce paperwork issues, make sure paperwork & placards matches the containers & load"; and

- "Keep safety training up to date in [iS]cout & HOS in regulation."

(Doc. 19-2).  Ward failed to submit DVIRs on multiple occasions.  (Doc. 19-4 at 37:21–38:22; 104:3-6; 102:19–103:7).

On December 3, 2019, Ward failed to utilize the iScout application to complete a pre-shift DVIR as required by Rockwater.  (Doc. 19-2).  On the same day, a Howard County Department of Public Safety ("DPS") Trooper stopped and noted three FMCSR violations: (1) an inoperable/obscured turn signal, (2) an inoperable/obscured stop lamp, and (3) an inoperable/obscured lamp other than a headlight, stop lamp, or turn signal.  (Doc. 19-4 at 104:25–105:20).  As a result, Rockwater placed Ward on a 30-day probation period requiring him to complete daily gate checks to ensure consistent utilization of the iScout application. (Doc. 19-2; Doc. 19-4 at 110:25–111:9).

In January and February 2020, Ward failed to clock in before his shift as required by Rockwater policy on multiple occasions.  (Doc. 19-2; Doc. 19-4 at 35:19–36:8; 119:8-25; 126:3-7).  On February 18, 2020, Ward damaged the landing gear on his company-assigned trailer and failed to timely report the damage in violation of Rockwater's policy.  (Doc. 19-4 at 35:5-22; 120:6-16).  On February 20, 2020, Ward violated Rockwater's seatbelt policy in addition to

failing to return his keys to the assigned key box and missing multiple punch-ins for his shifts. (Doc. 19-5).

On February 25, 2020, Ward completed a DVIR but did not complete a gate check before leaving for deliveries that day.  (*Id*.).  Thereafter, a DPS Trooper stopped Ward and cited him for two FMCSR violations: (1) no markings on a drum of hazardous material and (2) failure to properly label a package/container of hazardous material.  (Doc. 19-2).  On February 27, 2020, Rockwater's Operations Manager Joshua Deen ("Deen") terminated Plaintiff's employment.

## II.    LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Summary judgment is proper under Rule 56(a) of the Federal Rules of Civil Procedure "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute about a material fact is genuine when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986).  Substantive law identifies which facts are material.  *Id.*  The trial court "must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment."  *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981).

The party seeking summary judgment bears the initial burden of informing the court of its motion and identifying "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" that demonstrate the absence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c)(1)(A); *Celotex*, 477 U.S. at 323.  If the movant bears the

burden of proof on a claim or defense for which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Where the nonmovant bears the burden of proof, the movant may discharge the burden by showing that there is an absence of evidence to support the nonmovant's case. *Celotex*, 477 U.S. at 325; *Byers v. Dall. Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).

Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial." *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49). A nonmovant must present affirmative evidence to defeat a properly supported motion for summary judgment. *Anderson*, 477 U.S. at 257. Mere denials of material facts, unsworn allegations, or arguments and assertions in briefs or legal memoranda will not suffice to carry this burden. Rather, the Court requires "significant probative evidence" from the nonmovant to dismiss a request for summary judgment. *In re Mun. Bond Reporting Antitrust Litig.*, 672 F.2d 436, 440 (5th Cir. 1982) (quoting *Ferguson v. Nat'l Broad. Co.*, 584 F.2d 111, 114 (5th Cir. 1978)). The Court must consider all of the evidence but "refrain from making any credibility determinations or weighing the evidence." *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007).

### III.   DISCUSSION

After a careful review of the record and the arguments presented, the Court is not convinced that Plaintiff or Defendant have met their respective burdens of demonstrating that there is no genuine issue of material fact on Plaintiff's claims. Accordingly, the Court **DENIES** the Parties cross-motions for summary judgment. (Docs. 19, 20). Because the Court denies the Parties' motions for summary judgment, the Court finds it unnecessary to make any rulings on

the admissibility of the summary judgment evidence and any such objections are **OVERRULED**
as moot.

It is therefore **ORDERED** that Defendant's Motion for Summary Judgment (Doc. 19) is
hereby **DENIED**.

It is further **ORDERED** that Plaintiff's Motion for Partial Summary Judgment (Doc. 20)
is hereby **DENIED**.

It is so **ORDERED**.

SIGNED this 16th day of August, 2022.

_____
DAVID  COUNTS
UNITED STATES DISTRICT JUDGE